**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**CASE NO.:**

| | |
|---|---|
| **ANGELIA MILLER**, on behalf of herself and all others similarly situated individuals<br><br>**Plaintiff,**<br>v.<br><br>**TRANSWORD SYSTEMS INC,**<br>**COGNITION FINANCIAL**<br>**CORPORATION f/k/a FIRST**<br>**MARBLEHEAD CORPORATION,**<br>**THE NATIONAL COLLEGIATE**<br>**FUNDING LLC,**<br>**NATIONAL COLLEGIATE MASTER**<br>**STUDENT LOAN TRUST I,**<br>**NATIONAL COLLEGIATE STUDENT**<br>**LOAN TRUST 2003-1,**<br>**Defendants.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by and through her attorney, Abel L. Pierre, Esq., as and for her complaint against the Defendants, Transworld Systems, Inc. ("Transworld"), Cognition Financial Corporation f/k/a First Marblehead Corporation ("CFC"), The National Collegiate Funding LLC, National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust 2003-1, alleges as follows:

## I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendants' violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA") which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

## II. JURISDICTION

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k ("FDCPA") and 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

4. Venue in this district is also proper based on Transworld's regular transaction of business within this district. Venue in this district also is proper based on Transworld possessing a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency" in New York City which includes this district. Transworld also derives substantial revenue from services rendered in this district. The aforementioned transaction of business and services includes but is not limited to the collection of debt from consumers who reside in this district.

## III. ALLEGATIONS AS TO PARTIES & FACTS

5. Plaintiff, Angelia Miller, ("Miller") is a natural person residing in the State of New York.

6. Miller is a "consumer" as said term is defined under the FDCPA, 15 U.S.C. § 1692a(3).

7. Upon information and belief, TRANSWORLD SYSTEMS, INC. is a California Domestic Corporation and a New York Foreign Corporation with a principal place of business of 500 Virginia Drive, Ste. 514, Ft. Washington, PA 19034. Transworld is authorized to conduct business in the State of New York through its registered agent CT Corporation System at 111 Eighth Avenue, New York, NY 10011.

8. Per § 20-490 of the New York City Administrative Code, any business that seeks to collect personal or household debts from New York City residents must have a Debt Collection Agency License from the New York City Department of Consumer Affairs. Transworld

possesses a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency".]

9. Transworld operates an "Attorney Network business unit which is the agent and "Service Provider" (defined in Exhibit D) for fifteen Delaware statutory trusts including Defendants National Collegiate Student Loan Trust 2003-1, National Collegiate Master Student Loan Trust-I.  See Exhibit D.

10. Based on Exhibit D, the principal purpose of Transworld is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

11. Based upon the allegations in the above four paragraphs, Transworld is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

12. Upon information and belief, COGNITION FINANCIAL CORPORATION F/K/A FIRST MARBLEHEAD CORPORATION is a Delaware Domestic Corporation and a New York Foreign Corporation with a principal place of business of 200 Clarendon Street, 3rd Floor, Boston, Massachusetts 02116. CFC is authorized to conduct business in the State of New York through its registered agent CT Corporation System at 111 Eighth Avenue, New York, NY 10011.

13. Upon information and belief Defendant NATIONAL COLLEGIATE FUNDING LLC is a subsidiary of COGNITION FINANCIAL CORPORATION F/K/A FIRST MARBLEHEAD CORPORATION and is a foreign company operating as a student loan servicing institution. The National Collegiate Funding LLC is a limited liability company with a principal place

of business of c/o Wilmington Trust Company, as Owner Trustee, 100 North Market Street, Wilmington, DE 19890.

14. Upon information and belief, National Collegiate Master Student Loan Trust-I is a Delaware Statutory Trust with a principal place of business at c/o Wilmington Trust Company, as Owner Trustee, 100 North Market Street, Wilmington, DE 19890.

15. Upon information and belief, National Collegiate Student Loan Trust 2003-1 is a Delaware Statutory Trust with a principal place of business at c/o Wilmington Trust Company, as Owner Trustee, 100 North Market Street, Wilmington, DE 19890.

16. Per § 20-490 of the New York City Administrative Code, any business that seeks to collect personal or household debts from New York City residents must have a Debt Collection Agency License from the New York City Department of Consumer Affairs. Pursuant to New York City Local Law No. 15, a Debt Collection Agency includes any attorney-at-law or law firm engaging in traditional debt collection activity. See also Eric M. Berman, P.C. v. City of N.Y., 796 F.3d 171 (2nd Cir., 2015).

17. Forster & Garbus, LLP [hereinafter "F&G"] possesses a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency".

18. On the second page of Exhibit A, Exhibit B, and Exhibit C, F&G sets forth that it is a debt collector attempting to collect an alleged debt. Exhibit A Exhibit B, and Exhibit C, contain disclosures required to be made by a "debt collector" under the FDCPA as part of a communication attempting to collect a 'debt' or in connection with the collection of a "debt".

19. Based upon Exhibit A, Exhibit B, and Exhibit C, and upon F&G possessing a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection

Agency", the principal purpose of F&G is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

20. Based upon the allegations in the above four paragraphs, F&G is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

21. On December 8, 2015, F&G at the request and/or with the authority of Transworld and on behalf of National Collegiate Master Student Loan Trust-I filed and subsequently served Exhibit A on Miller.

22. On December 8, 2015, F&G at the request and/or with the authority of Transworld and on behalf of National Collegiate Student Loan Trust 2003-1 filed and subsequently served Exhibit B on Miller.

23. On December 8, 2015, F&G at the request and/or with the authority of Transworld and on behalf of National Collegiate Master Student Loan Trust-I filed and subsequently served Exhibit C on Miller.

24. For the reasons set forth below, Miller's receipt and reading of Exhibit A, Exhibit B, and Exhibit C, deprived Miller of her rights to not be subject to abusive, deceptive, or misleading debt collection practices.

25. Per Exhibit A, Exhibit B, and Exhibit C, Exhibit A, Exhibit B, and Exhibit C were filed and served to attempt to collect from Miller an educational loan debt. Also, Exhibit A, Exhibit B, and Exhibit C was an attempt to collect these past due debts from Miller in his individual capacity. Therefore, the past due debts at issue arose out of a transaction used primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

## VI. ALLEGATIONS OF LAW

26. Defendants violated the FDCPA.  Defendants' violations include, but are not limited to the following:  d, e, and f.

       i. Defendant violated 15 U.S.C. §1692d by harassing, oppressing and/or abusing the consumer by employing unfair tactics in attempt to collect a debt;

      ii. Defendant violated 15 U.S.C. §1692e by utilizing false, deceptive and misleading representation to collect a debt;

     iii. Defendants violated 15 U.S.C. §1692e(10) by utilizing false representation or deceptive means to collect a debt;

     iv. Defendant violated 15 U.S.C. §1692f by utilizing unfair and unconscionable means to attempt to collect an unfair alleged debt;

## VII. CLASS ALLEGATIONS

27. Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

28. The class consist of (a) all consumers (b) sued in New York State on behalf of National Collegiate Student Loan Trust 2003-1 within 5 years of the date of the filing of this lawsuit.

29. The class members are so numerous that joinder is impracticable. On information and belief, there are more than 50 members.

30. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.

31. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases and class actions.

32. A class action is the superior means of adjudicating this dispute.

33. Individual cases are not economically feasible.

## FIRST CAUSE OF ACTION-CLASS CLAIM

34. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-33 of this Complaint.

35. Exhibit A, Exhibit B, and Exhibit C each directly or indirectly represented to Miller and the court that National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, respectively had standing and/or a legal right to file and/or serve Exhibit A, Exhibit B, and Exhibit C and/or to obtain a Judgment for the amounts sought in Exhibit A, Exhibit B, and Exhibit C, respectively.

36. As set forth in Exhibit A, Exhibit B, and Exhibit C, the educational loan debts referred to in Exhibit A, Exhibit B, and Exhibit C did not originate with Defendants National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1.

37. The educational loan debts referred to in Exhibit A, Exhibit B, and Exhibit C were assigned, sold, or transferred one or more times before Defendants National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1 allegedly became the owner of the educational loan debts.

38. Prior to the filing and/or service of Exhibit A, Exhibit B, and Exhibit C, Miller did not receive a notice of the assignment, transfer, or sale from each and every prior assignor of the educational loan debt.

39. Prior to the filing and/or service of Exhibit A, Exhibit B, and Exhibit C, Miller was not sent a notice of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt.  In the alternative, prior to the filing and/or service of Exhibit A, Exhibit B, and Exhibit C, there did not exist the ability to produce a document showing that Miller was sent a notice of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt and/or the date on which Miller received such notice.

40. Prior to the filing and/or service of Exhibit A, Exhibit B, and Exhibit C, there did not exist the ability to produce a document showing a complete chain of title from the entity that originated the educational loan debt to National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, respectively.

41. For the reasons set forth in the above paragraphs 36-39 and/or 40, notwithstanding and separate and apart from NY CPLR 5019(c), pursuant to New York common law, National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, respectively did not have standing and/or a legal right to file and/or serve Exhibit A, Exhibit B, and Exhibit C and/or to obtain a Judgment for the amounts sought in Exhibit A, Exhibit B, and Exhibit C, respectively.

42. Prior to filing and/or serving Exhibit A, Exhibit B, and Exhibit C, F&G did not request, possess, and/or or review any documentation regarding the chain of title and/or the notice to Miller of the assignment, transfer, or sale by each and every prior assignor of the

educational loan debt. Therefore, F&G failed to conduct a "meaningful attorney review" prior to filing and/or serving Exhibit A, Exhibit B, and Exhibit C.

43. Transworld, on behalf of itself and National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, issued work standards, directives, and/or guidelines to F&G which contained instructions, controls, and rules governing the steps F&G could and could not take to attempt to collect debts including the filing and prosecution of lawsuits. These instructions, controls, and rules included the types of account documents F&G could request or obtain at various stages of a debt collection lawsuit. These instructions, controls, and rules controlled and/or substantially effected all the actions F&G took regarding the attempt to collection the educational loan debts via Exhibit A, Exhibit B, and Exhibit C.

44. All the actions alleged in this Complaint taken by F&G were taken by F&G as the attorney and/or "debt collector" for, on behalf of or at the request of the "debt collector" Transworld.

45. Based on the allegations in paragraphs 42 and 43 of this Complaint, Transworld is vicariously liable for the actions of F&G in attempting to collect the educational loan debts via the filing and/or service of Exhibit A, Exhibit B, and Exhibit C.

46. Prior to F&G filing and/or serving Exhibit A, Exhibit B, and Exhibit C, Transworld refused to provide to F&G or prohibited F&G from requesting any documentation regarding the chain of title and/or the notice to Miller of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt. In the alternative, Transworld authorized F&G to file and/or serve Exhibit A, Exhibit B, and Exhibit C without F&G requesting or possessing any documentation regarding the chain of title and/or the notice to Miller of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt.

In the alternative, prior to F&G filing and/or serving Exhibit A, Exhibit B, and Exhibit C, Transword knew or should have known that there did not exist the ability to produce a document showing that Miller was sent a notice of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt and/or the date on which Miller received such notice and there did not exist the ability to produce a complete chain of title.

47. For the reasons set forth above, F&G attempting to collect the educational loan debts via the filing and/or service of Exhibit A, Exhibit B, and Exhibit C amounted to a violation by Transworld of 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(3), 15 USC 1692e(5), 15 USC 1692e(10), 15 USC 1692f, and/or 15 USC 1692f (1).

## SECOND CAUSE OF ACTION-CLASS CLAIM

48. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-47 of this Complaint.

49. Upon information and belief, F&G filed and/or served Exhibit A, Exhibit B, and Exhibit C outside the statute of limitations as regards either the entire educational loan debt or the portion of the educational loan debt that was due prior to any acceleration of the educational loan debt to the extent allowed by the applicable statute of limitations and any tolling or forbearance of the applicable statute of limitations.

50. Prior to filing and/or serving Exhibit A, Exhibit B, and Exhibit C, F&G did not request, possess, and/or or review any documentation regarding the date on which Miller last made a payment and/or any forbearances. Therefore, F&G failed to conduct a "meaningful attorney review" prior to filing and/or serving Exhibit A, Exhibit B, and Exhibit C.

51. Transworld, on behalf of itself and National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, issued work standards, directives, and/or

guidelines to F&G which contained instructions, controls, and rules governing the steps F&G could and could not take to attempt to collect debts including the filing and prosecution of lawsuits. These instructions, controls, and rules included the types of account documents F&G could request or obtain at various stages of a debt collection lawsuit. These instructions, controls, and rules controlled and/or substantially effected all the actions F&G took regarding the attempt to collection the educational loan debts via Exhibit A, Exhibit B, and Exhibit C.

52. All the actions alleged in this Complaint taken by F&G were taken by F&G as the attorney and/or "debt collector" for, on behalf of or at the request of the "debt collector" Transworld.

53. Based on the allegations in paragraphs 42 and 43 of this Complaint, Transworld is vicariously liable for the actions of F&G in attempting to collect the educational loan debts via the filing and/or service of Exhibit A, Exhibit B, and Exhibit C.

54. Prior to F&G filing and/or serving Exhibit A, Exhibit B, and Exhibit C, Transworld refused to provide to F&G or prohibited F&G from requesting any documentation regarding the date on which Miller last made a payment and/or any forbearances. In the alternative, Transworld authorized F&G to file and/or serve Exhibit A, Exhibit B, and Exhibit C without F&G requesting or possessing any documentation regarding the chain of title and/or the notice to Miller of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt.

55. For the reasons set forth above, F&G attempting to collect the educational loan debts via the filing and/or service of Exhibit A, Exhibit B, and Exhibit C amounted to a violation by Transworld of 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(3), 15 USC 1692e(5), 15 USC 1692e(10), 15 USC 1692f, and/or 15 USC 1692f (1).

## THIRD CAUSE OF ACTION-CLASS CLAIM

56. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-55 of this Complaint.

57. Based on the allegations set forth in this Complaint, the filing and/or service of Exhibit A, Exhibit B, and Exhibit C by F&G was deceptive or misleading.

58. The filing and/or service of Exhibit A, Exhibit B, and Exhibit C by F&G was consumer oriented for the following reasons:

   a. They were directed at Plaintiff;

   b. Plaintiff is a consumer;

   c. The conduct at issue against Plaintiff, a consumer, affected or had the potential to affect similarly situated consumers; and

   d. Defendants regularly attempt to collect student loans and other consumer debts from hundreds or thousands of consumers. The same or similar violations of the FDCPA as set forth in this Complaint were directed at numerous numbers of these consumers.

59. Plaintiff suffered injuries as a result of the deceptive or misleading actions including but not limited to the aforementioned violations of his rights under the FDCPA, the cost of retaining an attorney to defend him, and the emotional distress of being sued.

60. For the same reasons as set forth in the prior causes of action in this Complaint, Transworld is vicariously liable and/or directly responsible for each of the aforementioned actions, misrepresentations, and violations of the FDCPA set forth above.

61. The actions by F&G and Transworld set forth in this Complaint were done by F&G and Transworld as the attorney and/or agent of and for the benefit of National Collegiate Master

Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1.

62. The actions by F&G and Transworld set forth in this Complaint were done by F&G and Transworld with the knowledge and/or authority of National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1.

63. In light of the allegations in this cause of action, each of the aforementioned actions, misrepresentations, and violations of the FDCPA set forth above constitute a violation of General Business Law 349 by Defendants.

**FOURTH CAUSE OF ACTION-CLASS CLAIM**

**Violations of the New York General Business Law § 349**

64. Plaintiff adopts and realleges the foregoing as fully stated herein.

65. Under New York General Business Law §349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

66. GBL § 349 provides in relevant part as follows:

a. *Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.*

And;

h. *In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.*

67. It is the regular business practice of Defendants to harass consumers in an abusive manner by commencing State Court actions where they did not have standing or legal authority to bring suit.

68. Defendants engaged in such deceptive practices aimed at other consumers.

69. Defendants' actions have a broad impact on consumers at large.

70. By unlawfully harassing Plaintiff, Defendants caused Plaintiff to suffer actual injury in the form of emotional distress.

71. By unlawfully seeking to collect a debt from Plaintiff, Defendants caused Plaintiff to suffer actual injury in the form of emotional distress.

72. As a direct and proximate result of Defendants' deceptive acts and practices committed in violation of New York GBL § 349, Plaintiff was damaged in that she, among other things, suffered stress and anxiety as a result of Defendants' abusive attempts to collect a debt.

73. Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged to be owed by him, by engaging in behavior which is harassing or abusing to Plaintiff or otherwise engaging in acts or practices that are unfair or deceptive towards Plaintiff.

## PRAYER FOR RELIEF

Plaintiff, Angelia Miller prays that this Court:

a. Grant an order certifying the proposed class herein under Federal Rule 23 and appointing Plaintiff and his undersigned counsel of record to represent same;

b. Create a common fund available to provide notice of and remedy Defendant's violations;

c. Declare that Defendants violated the FDCPA;

d. Declare that Defendants violated NY GBL;

e. for an award of actual and treble damages pursuant to 15 U.S.C. § 1692k against the Defendants for Plaintiff;

f.  Enter judgment in favor of Plaintiff and against Defendants, for statutory

damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of

the FDCPA;

g.  Enter judgment enjoining Defendants from collecting or attempting to collect

any debt alleged to be owed by Plaintiff,

h.  Grant such further relief as deemed just.

## JURY DEMAND

Plaintiff, Angelia Miller demands trial by jury.

Respectfully submitted,

Dated: January 31, 2018

**LAW OFFICE OF ABEL L. PIERRE,
ATTORNEY-AT-LAW, P.C.**

Attorney I.D.#AP-5508
140 Broadway, 46th Floor
New York, New York 10005
Telephone:  (212) 766-3323
Facsimile:  (212) 766-3322
abel@apierrelaw.com

**Attorney for Plaintiff**

# EXHIBIT A

```
SUPREME COURT OF THE STATE OF NEW YORK         INDEX # 14522              R
COUNTY OF QUEENS                                        SUMMONS
-----------------------------------------------        DEC 08 2015
NATIONAL COLLEGIATE MASTER               PLAINTIFF'S ADDRESS
STUDENT LOAN TRUST I, A        PLAINTIFF, 800 BOYLSTON ST FL34
DELAWARE STATUTORY TRUST(S)              BOSTON,    MA 02199
                                                                         X
       - AGAINST -                       DEFENDANT'S ADDRESSES
ANGELIA MILLER                           13510 228TH ST

JANNIE MOORE                  DEFENDANT(S). LAURELTON NY 11413-2443
-----------------------------------------------
CONSUMER CREDIT TRANSACTION              CODEF- 209 08 116TH RD

                                         CAMBRIA HEIGHTS NY 11411-0000
THE BASIS OF THE VENUE IS:
     A DEFENDANT RESIDES IN THE COUNTY OF QUEENS
     THE TRANSACTION TOOK PLACE IN THE COUNTY OF QUEENS


TO THE ABOVE NAMED DEFENDANT(S): ANGELIA MILLER
                                 JANNIE MOORE
YOU ARE HEREBY SUMMONED TO ANSWER THE COMPLAINT IN THIS ACTION AND TO
SERVE A COPY OF YOUR ANSWER ON THE PLAINTIFF'S ATTORNEY(S) WITHIN
20 DAYS AFTER THE SERVICE OF THIS SUMMONS, EXCLUSIVE OF THE DAY OF
SERVICE (OR WITHIN 30 DAYS AFTER THE SERVICE IS COMPLETE IF THIS
SUMMONS IS NOT PERSONALLY DELIVERED TO YOU WITHIN THE STATE OF NEW YORK).



UPON YOUR FAILURE TO ANSWER, JUDGMENT WILL BE TAKEN AGAINST YOU FOR THE
RELIEF DEMANDED IN THE COMPLAINT, TOGETHER WITH THE DISBURSEMENTS OF
THIS ACTION.
DATED THE 30 DAY OF NOVEMBER , 2015

                                  FORSTER & GARBUS LLP
     FILE NO.                     ATTORNEY(S) FOR PLAINTIFF
MT70000108197                     60 MOTOR PARKWAY
                                  COMMACK, NY 11725
ORIG ACCT# END IN: 1000           (631) 393-9400

NOTE: THE LAW PROVIDES THAT:
   (A) IF THIS SUMMONS IS SERVED BY ITS DELIVERY TO YOU PERSONALLY WITHIN
THE COUNTY OF QUEENS       YOU MUST APPEAR AND ANSWER WITHIN 20 DAYS AFTER
SUCH SERVICE: OR
   (B) IF THIS SUMMONS IS SERVED BY DELIVERY TO ANY PERSON OTHER THAN YOU
PERSONALLY, OR IS SERVED OUTSIDE THE COUNTY OF QUEENS      , OR BY PUBLI-
CATION, OR BY ANY MEANS OTHER THAN PERSONAL DELIVERY TO YOU WITHIN THE
COUNTY OF QUEENS       YOU ARE ALLOWED 30 DAYS AFTER SERVICE IS COMPLETE
WITHIN WHICH TO APPEAR AND ANSWER.



DEFENDANT'S POB:
```

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS                                    FORMAL COMPLAINT
-------------------------------------------------
NATIONAL COLLEGIATE MASTER
STUDENT LOAN TRUST I, A                PLAINTIFF,
DELAWARE STATUTORY TRUST(S)


          - AGAINST -
ANGELIA MILLER
JANNIE MOORE                        DEFENDANT(S).
-------------------------------------------------
    PLAINTIFF, BY ITS ATTORNEY(S), COMPLAINING OF THE DEFENDANT(S), UPON
INFORMATION AND BELIEF, ALLEGES:
1.   THAT THE DEFENDANT(S) RESIDES IN THE COUNTY IN WHICH THIS ACTION IS
BROUGHT; OR THAT THE DEFENDANT(S) TRANSACTED BUSINESS WITHIN  THE COUNTY
IN WHICH THIS ACTION IS BROUGHT IN PERSON OR THROUGH HIS AGENT AND THAT
THE INSTANT CAUSE OF ACTION AROSE OUT OF SAID TRANSACTION
2. PLAINTIFF IS A STATUTORY TRUST ORGANIZED UNDER THE LAWS OF THE STATE OF
   DELAWARE AND IS AUTHORIZED TO PROCEED WITH THIS ACTION.
3. UPON INFORMATION AND BELIEF, DEFENDANT(S) REQUESTED AN EDUCATIONAL LOAN.
   THAT REQUEST WAS RECEIVED BY ITS SERVICING AGENT. THE LOAN WAS APPROVED,
   FUNDS WERE DISBURSED BY A LENDING INSTITUTION, AND THE OWNERSHIP OF THE
   NOTE FOR THE SUBJECT LOAN WAS TRANSFERRED TO PLAINTIFF.
4. DEFENDANT(S) DEFAULTED ON SAID AGREEMENT, $  46,638.68 IS DUE AND OWING.
5. DEFENDANT(S) IS IN DEFAULT AND DEMAND FOR PAYMENT HAS BEEN MADE.

6. PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION.

PLAINTIFF IS THE ORIGINAL CREDITOR AND IS NOT REQUIRED TO BE LICENSED
BY THE NYC DEPARTMENT OF CONSUMER AFFAIRS.




2ND CAUSE/ACTION: PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION
THAT THERE IS NOW DUE PLAINTIFF FROM DEFENDANT(S) THE AMOUNT SET FORTH IN
THE COMPLAINT, NO PART OF WHICH HAS BEEN PAID, ALTHOUGH DULY DEMANDED.

WHEREFORE, PLAINTIFF DEMANDS JUDGMENT AGAINST DEFENDANT(S) FOR THE SUM OF
   46,638.68
TOGETHER WITH THE DISBURSEMENTS OF THIS ACTION

WE ARE DEBT COLLECTORS; ANY            FORSTER & GARBUS LLP
INFORMATION OBTAINED WILL BE USED      ATTORNEY(S) FOR PLAINTIFF
IN ATTEMPTING TO COLLECT THIS DEBT.    60 MOTOR PARKWAY
                                       COMMACK, NY 11725


DATED: THE 30 DAY OF NOVEMBER , 2015

                              VALERIE E. WATTS  JOEL D. LEIDERMAN  KEVIN M. KNAB

PURSUANT TO PART 130-1.1-a OF THE RULES OF THE
CHIEF ADMINISTRATOR THIS SIGNATURE APPLIES
TO THE ATTACHED SUMMONS AND COMPLAINT

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK          INDEX #                      R
COUNTY OF QUEENS                                            SUMMONS
-------------------------------------------------
NATIONAL COLLEGIATE STUDENT LOAN          PLAINTIFF'S ADDRESS DEC 08 2015
TRUST 2003-1, A DELAWARE          PLAINTIFF, 800 BOYLSTON ST FL34
STATUTORY TRUST(S)                          BOSTON, MA 02199
                                                                                    X
        - AGAINST -                          DEFENDANT'S ADDRESSES
ANGELIA MILLER                              13510 228TH ST

JANNIE MOORE                    DEFENDANT(S). LAURELTON NY 11413-2443
-------------------------------------------------
CONSUMER CREDIT TRANSACTION          CODEF- 20908 116TH RD

                                            CAMBRIA HEIGHTS NY 11411-0000
THE BASIS OF THE VENUE IS:
     A DEFENDANT RESIDES IN THE COUNTY OF QUEENS
     THE TRANSACTION TOOK PLACE IN THE COUNTY OF QUEENS

TO THE ABOVE NAMED DEFENDANT(S): ANGELIA MILLER
                                 JANNIE MOORE
YOU ARE HEREBY SUMMONED TO ANSWER THE COMPLAINT IN THIS ACTION AND TO
SERVE A COPY OF YOUR ANSWER ON THE PLAINTIFF'S ATTORNEY(S) WITHIN
20 DAYS AFTER THE SERVICE OF THIS SUMMONS, EXCLUSIVE OF THE DAY OF
SERVICE (OR WITHIN 30 DAYS AFTER THE SERVICE IS COMPLETE IF THIS
SUMMONS IS NOT PERSONALLY DELIVERED TO YOU WITHIN THE STATE OF NEW YORK).



UPON YOUR FAILURE TO ANSWER, JUDGMENT WILL BE TAKEN AGAINST YOU FOR THE
RELIEF DEMANDED IN THE COMPLAINT, TOGETHER WITH THE DISBURSEMENTS OF
THIS ACTION.
DATED THE 30 DAY OF NOVEMBER , 2015

                              FORSTER & GARBUS LLP
     FILE NO.                 ATTORNEY(S) FOR PLAINTIFF
MR30000108199                 60 MOTOR PARKWAY
                              COMMACK, NY 11725
ORIG ACCT# END IN: 1000       (631) 393-9400

NOTE: THE LAW PROVIDES THAT:
  (A) IF THIS SUMMONS IS SERVED BY ITS DELIVERY TO YOU PERSONALLY WITHIN
THE COUNTY OF QUEENS          YOU MUST APPEAR AND ANSWER WITHIN 20 DAYS AFTER
SUCH SERVICE: OR
  (B) IF THIS SUMMONS IS SERVED BY DELIVERY TO ANY PERSON OTHER THAN YOU
PERSONALLY, OR IS SERVED OUTSIDE THE COUNTY OF QUEENS      , OR BY PUBLI-
CATION, OR BY ANY MEANS OTHER THAN PERSONAL DELIVERY TO YOU WITHIN THE
COUNTY OF QUEENS          YOU ARE ALLOWED 30 DAYS AFTER SERVICE IS COMPLETE
WITHIN WHICH TO APPEAR AND ANSWER.



DEFENDANT'S POB:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS                                    FORMAL COMPLAINT
------------------------------------------------
NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2003-1, A DELAWARE              PLAINTIFF,
STATUTORY TRUST(S)


        - AGAINST -
ANGELIA MILLER
JANNIE MOORE                      DEFENDANT(S).
------------------------------------------------
    PLAINTIFF, BY ITS ATTORNEY(S), COMPLAINING OF THE DEFENDANT(S), UPON
INFORMATION AND BELIEF, ALLEGES:
1.  THAT THE DEFENDANT(S) RESIDES IN THE COUNTY IN WHICH THIS ACTION IS
BROUGHT; OR THAT THE DEFENDANT(S) TRANSACTED BUSINESS WITHIN  THE COUNTY
IN WHICH THIS ACTION IS BROUGHT IN PERSON OR THROUGH HIS AGENT AND THAT
THE INSTANT CAUSE OF ACTION AROSE OUT OF SAID TRANSACTION
2.PLAINTIFF IS A STATUTORY TRUST ORGANIZED UNDER THE LAWS OF THE STATE OF
   DELAWARE AND IS AUTHORIZED TO PROCEED WITH THIS ACTION.
3.UPON INFORMATION AND BELIEF, DEFENDANT(S) REQUESTED AN EDUCATIONAL LOAN.
   THAT REQUEST WAS RECEIVED BY ITS SERVICING AGENT. THE LOAN WAS APPROVED,
   FUNDS WERE DISBURSED BY A LENDING INSTITUTION, AND THE OWNERSHIP OF THE
   NOTE FOR THE SUBJECT LOAN WAS TRANSFERRED TO PLAINTIFF.
4.DEFENDANT(S) DEFAULTED ON SAID AGREEMENT, $  44,338.81 IS DUE AND OWING.
5.DEFENDANT(S) IS IN DEFAULT AND DEMAND FOR PAYMENT HAS BEEN MADE.

6.PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION.

PLAINTIFF IS THE ORIGINAL CREDITOR AND IS NOT REQUIRED TO BE LICENSED
BY THE NYC DEPARTMENT OF CONSUMER AFFAIRS.




2ND CAUSE/ACTION:PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION
THAT THERE IS NOW DUE PLAINTIFF FROM DEFENDANT(S) THE AMOUNT SET FORTH IN
THE COMPLAINT, NO PART OF WHICH HAS BEEN PAID, ALTHOUGH DULY DEMANDED.

WHEREFORE, PLAINTIFF DEMANDS JUDGMENT AGAINST DEFENDANT(S) FOR THE SUM OF
   44,338.81
TOGETHER WITH THE DISBURSEMENTS OF THIS ACTION

WE ARE DEBT COLLECTORS; ANY            FORSTER & GARBUS LLP
INFORMATION OBTAINED WILL BE USED      ATTORNEY(S) FOR PLAINTIFF
IN ATTEMPTING TO COLLECT THIS DEBT.    60 MOTOR PARKWAY
                                       COMMACK, NY 11725


DATED: THE 30 DAY OF NOVEMBER , 2015

                                       _____
                                       VALERIE E. WATTS  JOEL D. LEIDERMAN  KEVIN M. KNAB

PURSUANT TO PART 130-1.1-a OF THE RULES OF THE
CHIEF ADMINISTRATOR THIS SIGNATURE APPLIES
TO THE ATTACHED SUMMONS AND COMPLAINT

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK     INDEX #            R
COUNTY OF QUEENS                                      SUMMONS

--------------------------------------------------
NATIONAL COLLEGIATE MASTER              PLAINTIFF'S ADDRESS   DEC 0 8 2015
STUDENT LOAN TRUST I, A        PLAINTIFF, 800 BOYLSTON ST FL34
DELAWARE STATUTORY TRUST(S)             BOSTON,    MA  02199
                                                                      X
        - AGAINST -                     DEFENDANT'S ADDRESSES
ANGELA MILLER                           13510 228TH ST

JANNIE MOORE               DEFENDANT(S).  LAURELTON NY 11413-2443
--------------------------------------------------
CONSUMER CREDIT TRANSACTION         CODEF- 209 08 116TH ROAD

                                    CAMBRIA HEIGHTS NY 11411-0000
THE BASIS OF THE VENUE IS:
     A DEFENDANT RESIDES IN THE COUNTY OF QUEENS
     THE TRANSACTION TOOK PLACE IN THE COUNTY OF QUEENS


TO THE ABOVE NAMED DEFENDANT(S): ANGELA MILLER
                                 JANNIE MOORE
YOU ARE HEREBY SUMMONED TO ANSWER THE COMPLAINT IN THIS ACTION AND TO
SERVE A COPY OF YOUR ANSWER ON THE PLAINTIFF'S ATTORNEY(S) WITHIN
20 DAYS AFTER THE SERVICE OF THIS SUMMONS, EXCLUSIVE OF THE DAY OF
SERVICE (OR WITHIN 30 DAYS AFTER THE SERVICE IS COMPLETE IF THIS
SUMMONS IS NOT PERSONALLY DELIVERED TO YOU WITHIN THE STATE OF NEW YORK).



UPON YOUR FAILURE TO ANSWER, JUDGMENT WILL BE TAKEN AGAINST YOU FOR THE
RELIEF DEMANDED IN THE COMPLAINT, TOGETHER WITH THE DISBURSEMENTS OF
THIS ACTION.
DATED THE 30 DAY OF NOVEMBER , 2015

                                FORSTER & GARBUS LLP
     FILE NO.                   ATTORNEY(S) FOR PLAINTIFF
MT70000108193                   60 MOTOR PARKWAY
                                COMMACK, NY 11725
ORIG ACCT# END IN: 1000         (631) 393-9400

NOTE: THE LAW PROVIDES THAT:
   (A) IF THIS SUMMONS IS SERVED BY ITS DELIVERY TO YOU PERSONALLY WITHIN
THE COUNTY OF QUEENS      YOU MUST APPEAR AND ANSWER WITHIN 20 DAYS AFTER
SUCH SERVICE: OR
   (B) IF THIS SUMMONS IS SERVED BY DELIVERY TO ANY PERSON OTHER THAN YOU
PERSONALLY, OR IS SERVED OUTSIDE THE COUNTY OF QUEENS      , OR BY PUBLI-
CATION, OR BY ANY MEANS OTHER THAN PERSONAL DELIVERY TO YOU WITHIN THE
COUNTY OF QUEENS      YOU ARE ALLOWED 30 DAYS AFTER SERVICE IS COMPLETE
WITHIN WHICH TO APPEAR AND ANSWER.




DEFENDANT'S POB:

... T OF THE STATE OF NEW YORK
... OF QUEENS

FORMAL COMPLAINT

NATIONAL COLLEGIATE MASTER                    PLAINTIFF,
STUDENT LOAN TRUST I, A
DELAWARE STATUTORY TRUST(S)

                - AGAINST -

ANGELA MILLER                    DEFENDANT(S).
JANNIE MOORE
-----------------------------------------------------
     PLAINTIFF, BY ITS ATTORNEY(S), COMPLAINING OF THE DEFENDANT(S), UPON
INFORMATION AND BELIEF, ALLEGES:
1.   THAT THE DEFENDANT(S) RESIDES IN THE COUNTY IN WHICH THIS ACTION IS
BROUGHT; OR THAT THE DEFENDANT(S) TRANSACTED BUSINESS WITHIN  THE COUNTY
IN WHICH THIS ACTION IS BROUGHT IN PERSON OR THROUGH HIS AGENT AND THAT
THE INSTANT CAUSE OF ACTION AROSE OUT OF SAID TRANSACTION
2. PLAINTIFF IS A STATUTORY TRUST ORGANIZED UNDER THE LAWS OF THE STATE OF
   DELAWARE AND IS AUTHORIZED TO PROCEED WITH THIS ACTION.
3. UPON INFORMATION AND BELIEF, DEFENDANT(S) REQUESTED AN EDUCATIONAL LOAN.
   THAT REQUEST WAS RECEIVED BY ITS SERVICING AGENT. THE LOAN WAS APPROVED,
   FUNDS WERE DISBURSED BY A LENDING INSTITUTION, AND THE OWNERSHIP OF THE
   NOTE FOR THE SUBJECT LOAN WAS TRANSFERRED TO PLAINTIFF.
4. DEFENDANT(S) DEFAULTED ON SAID AGREEMENT, $ 31,862.74 IS DUE AND OWING.
5. DEFENDANT(S) IS IN DEFAULT AND DEMAND FOR PAYMENT HAS BEEN MADE.

6. PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION.

PLAINTIFF IS THE ORIGINAL CREDITOR AND IS NOT REQUIRED TO BE LICENSED
BY THE NYC DEPARTMENT OF CONSUMER AFFAIRS.

2ND CAUSE/ACTION:PLAINTIFF STATED AN ACCOUNT TO DEFENDANT WITHOUT OBJECTION
THAT THERE IS NOW DUE PLAINTIFF FROM DEFENDANT(S) THE AMOUNT SET FORTH IN
THE COMPLAINT, NO PART OF WHICH HAS BEEN PAID, ALTHOUGH DULY DEMANDED.

WHEREFORE, PLAINTIFF DEMANDS JUDGMENT AGAINST DEFENDANT(S) FOR THE SUM OF
     31,862.74
TOGETHER WITH THE DISBURSEMENTS OF THIS ACTION

WE ARE DEBT COLLECTORS; ANY              FORSTER & GARBUS LLP
INFORMATION OBTAINED WILL BE USED        ATTORNEY(S) FOR PLAINTIFF
IN ATTEMPTING TO COLLECT THIS DEBT.      60 MOTOR PARKWAY
                                         COMMACK, NY 11725

DATED: THE 30 DAY OF NOVEMBER , 2015

                                    VALERIE E. WATTS  JOEL D. LEIDERMAN  KEVIN M. KNAB
PURSUANT TO PART 130-1.1-a OF THE RULES OF THE
CHIEF ADMINISTRATOR THIS SIGNATURE APPLIES

# EXHIBIT D

## UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING File
2017-CFPB-0018

| | |
|---|---|
| In the Matter of:<br><br>**TRANSWORLD SYSTEMS, INC.** | **CONSENT ORDER** |

## I.
## Overview

The Consumer Financial Protection Bureau (Bureau) has reviewed the debt collections litigation practices of the Attorney Network business unit of Transworld Systems, Inc. ("TSI") ("Respondent"), the agent and Service Provider for fifteen (15) Delaware statutory trusts referred to as the National Collegiate Student Loan Trusts ("NCSLTs", or "the Trusts", which are the National Collegiate Master Student Loan Trust, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4), and has identified violations of sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA). Under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order (Consent Order).

To collect on defaulted private student loans, Law Firms engaged by Respondent's Attorney Network business unit filed debt Collections Lawsuits in state

1

courts across the country on behalf of the Trusts. In support of many of these lawsuits, Respondent executed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, since November 1, 2014, Law Firms hired by Respondent filed hundreds of debt Collections Lawsuits without the documentation necessary to prove Trust ownership of the loans.

## II

### Jurisdiction

1.   The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565.

## III
### Stipulation

2.   Respondent has executed a "Stipulation and Consent to the Issuance of a Consent Order," dated September 14, 2017 (Stipulation), which is incorporated by reference and is accepted by the Bureau. By this Stipulation, Respondent has consented to the issuance of this Consent Order by the Bureau under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, without admitting or denying any of the findings of fact or conclusions of law, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

## IV
### Definitions

2

3.   The following definitions apply to this Consent Order:

a.   "Affiant" means any signatory to an Affidavit, signing in his or her capacity as an employee or agent of Respondent, but excluding one signing solely as a notary or witness to the act of signing.

b.   "Affidavit" means any sworn statement filed with a court in connection with a Collections Lawsuit.

c.   "Board" means TSI's duly elected and acting Board of Directors.

d.   "Clearly and Prominently" means:

  i.   as to written information: written in a type size and location sufficient for an ordinary consumer to read and comprehend it, and disclosed in a manner that would be easily recognizable and understandable in language and syntax to an ordinary consumer; if the information is contained in a multi-page print document, the disclosure appears on the first page.

  ii.   as to information presented orally: spoken and disclosed in a volume, cadence, and syntax sufficient for an ordinary consumer to hear and comprehend.

e.   "Collections Lawsuits" means attempts by a Law Firm engaged by Respondent's Attorney Network business unit, for an account owned or alleged to be owned by a Trust, through judicial processes in the United States of America, to collect or establish a Consumer's liability for a Debt.

f.   "Consumer" means any natural person obligated or allegedly obligated to pay any Debt.

3

g. "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

h. "Effective Date" means the date on which the Consent Order is issued.

i. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his/her delegate.

j. "Law Firm" means a law firm engaged by Respondent's Attorney Network business unit to collect student loan Debt on behalf of the National Collegiate Student Loan Trusts.

k. "Regional Director" means the Regional Director for the Northeast Region for the Office of Supervision for the Consumer Financial Protection Bureau, or his/her delegate.

l. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Respondent based on substantially the same facts as described in Section V of this Consent Order.

m. "Relevant Period" includes the period from November 1, 2014 to April 25, 2016.

n. "Respondent" means Transworld Systems, Inc., and its successors and assigns.

4

o. "Service Providers" means any service provider, as defined in section 1002(26) of the CFPA, 12 U.S.C. § 5481, that provides or provided services with respect to the servicing of the student loans owned by a NCSLT.

## V.

## Bureau Findings and Conclusions

The Bureau finds the following:

4.    The National Collegiate Student Loan Trusts ("NCSLTs" or "the Trusts") comprise fifteen (15) Delaware statutory trusts created between 2001 and 2007. The basic purpose of each Trust is to acquire a pool of student loans, enter into the so-called trust-related agreements, and provide for the administration of the Trusts and the servicing of student loans.

5.    The Trusts do not have any employees and all actions taken by the Trusts in connection with loan servicing and collecting Debt are carried out by third parties.

6.    Debt-collection activities on behalf of the Trusts are carried out by the successor special servicer's sub-servicer pursuant to servicing agreements with the successor special servicer.

7.    Sub-servicers that executed and notarized the deceptive affidavits did so as Service Providers and agents of the Trusts.

8.    Law Firms that filed lawsuits on behalf of the Trusts did so as Service Providers and agents of the Trusts.

9.   Respondent Transworld Systems, Inc. (TSI) is incorporated under the laws of the State of California and maintains a principal place of business in Ft. Washington, Pennsylvania.

10.  TSI maintains an office in Peachtree Corners, Georgia, where its employees execute and notarize affidavits for Collections Lawsuits brought on behalf of the Trusts.

11.  A national network of Law Firms engaged by Respondent file and prosecute Collections Lawsuits on behalf of the Trusts in courts across the country.

12.  TSI has operated as the successor sub-servicer to the successor special servicer of the Trusts since November 1, 2014.

13.  TSI is a "covered person" under 12 U.S.C. § 5481(6) because it is engaged in the collection of debt and is a Service Provider. 12 U.S.C. § 5481(15)(A)(x), (26).

14.  TSI is an agent and Service Provider of the Trusts.

## FALSE AND MISLEADING AFFIDAVITS AND TESTIMONY

15.  In connection with collecting or attempting to collect Debt from Consumers, between November 1, 2014 and April 25, 2016, Law Firms hired by Respondent on behalf of the Trusts initiated 37,689 Collections Lawsuits in courts across the country on behalf of the Trusts.

16.  In support of the Collections Lawsuits, Law Firms submitted Affidavits executed by Respondent and documents in support of the Trusts' claims that Consumers owed Debts to a Trust.

17.  Respondent executed and notarized Affidavits—often with attached exhibits—that were used by Law Firms in many of the Collections Lawsuits

brought on behalf of the Trusts between November 1, 2014 and April 25, 2016.

18.  In these Affidavits, the Affiants swore that they had personal knowledge of the education loan records evidencing the Debt. In fact, in numerous instances, Affiants lacked personal knowledge of the education loan records evidencing the Debt when they executed the Affidavits.

19.  The Affiants also asserted that they were authorized and competent to testify about the Consumers' Debts through review of and "personal knowledge" of the business records, including electronic data in their possession. In fact, in certain instances, Affiants lacked personal knowledge of the business records, including the electronic data, showing that Consumers owed Debts to the Trusts. Affiants were instructed to review certain data on a computer screen as part of an effort to verify some information in the Affidavits about the Debts. Affiants, however, did not always know the source of the data on that screen, how the data was obtained or maintained, whether it was accurate, or whether that data meant that the Debt was in fact owed to the Trusts.

20.  Each Affiant also swore that he/she had "personal knowledge of the record management practices and procedures of Plaintiff [the Trust] and the practices and procedures Plaintiff requires of its loan servicers and other agents." In fact, certain Affiants lacked personal knowledge of the record management practices and procedures of the Trusts and the practices and procedures the Trusts required of its loan servicers and other agents.

21.   In many Affidavits, the Affiants also stated that "I have reviewed the chain
      of title records as business records" regarding the relevant account. In some
      cases, Affiants did not possess the chain of title records but reviewed "chain
      of title" records that were found online on a government portal maintained
      by the Securities and Exchange Commission. In numerous instances,
      Affiants did not review the chain of title records prior to executing the
      Affidavits.

22.   In certain Affidavits, the Affiants asserted that they had personal knowledge
      that the loans were transferred, sold, and assigned to the plaintiff Trusts on
      dates certain. In fact, in numerous instances, Affiants lacked personal
      knowledge of the chain of assignment records necessary to prove that the
      relevant Trust owned the subject loans.

23.   In some instances, certain Affiants complained to supervisors that they did
      not have personal knowledge of the representations made in the Affidavits.
      These affiants continued to execute Affidavits, however, for fear of losing
      their jobs.

24.   Affiants also provided live testimony in court, purportedly based on
      personal knowledge, similar to the statements made in the Affidavits as
      described in Paragraphs 18-22.

## FILING LAWSUITS WITHOUT THE INTENT OR ABILITY TO PROVE THE CLAIMS, IF CONTESTED

25.   From November 1, 2014 to April 25, 2016, on behalf of the Trusts, Law
      Firms filed numerous Collections Lawsuits against Consumers even though

the complete documentation needed to prove that the Trusts owned the loans did not exist.

26. In these lawsuits, documentation of a complete chain of assignment evidencing that the subject loan was transferred to and owned by the Trust was lacking.

27. In addition, Law Firms hired by Respondent on behalf of the Trusts filed numerous Collections Lawsuits where the loans in question were disbursed to the Consumers after the loans allegedly were transferred to the Trusts according to the chain of assignment documents.

28. On numerous occasions, Law Firms hired by Respondent filed Collections Lawsuits even though the promissory note to prove that a Debt was owed did not exist.

29. For each Collections Lawsuit described in Paragraphs 25-28, Law Firms hired by Respondent could not prove that a Debt was owed to the Trusts, if contested.

### Violations of the Consumer Financial Protection Act

30. Covered persons are prohibited from engaging "in any unfair, deceptive, or abusive act or practice" in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

31. An act or practice is deceptive under the CFPA if it involves a material representation or omission that misleads, or is likely to mislead, a consumer acting reasonably under the circumstances.

32. An act or practice is unfair if "(A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by

9

consumers; and (B) such substantial injury is not outweighed by

countervailing benefits to consumers or competition." 12 U.S.C.

§ 5531(c)(1).

## FALSE AND MISLEADING COLLECTION AFFIDAVITS AND TESTIMONY

33. In numerous instances, in connection with collecting or attempting to

collect Debt from Consumers, Respondent executed Affidavits that were

used by Law Firms with many of the Collections Lawsuits filed by Law

Firms on behalf of the Trusts in courts across the country, and in live

testimony, Respondent represented, directly or indirectly, expressly or by

implication, that:

   a. Affiants had personal knowledge of the account records and the Debt;

   b. Affiants had personal knowledge of the chain of assignment records

      evidencing Trust ownership of the subject loan; and

   c. Affiants had personal knowledge of the record management practices

      and procedures of the Trusts and all prior servicers.

34. In fact, as described in Paragraphs 18 to 24, in numerous instances, these

representations were either false or the Affiant did not have a basis for

making the representation.

35. The representations are material because they are likely to affect a

Consumer's choice or conduct regarding how to respond to a Collections

Lawsuit and are likely to mislead a Consumer acting reasonably under the

circumstances.

36.   Thus, representations by Respondent, as described in Paragraphs 18-24, constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## FILING LAWSUITS WITHOUT THE INTENT OR ABILITY TO PROVE THE CLAIMS, IF CONTESTED

37.   In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, Respondent, acting through the Law Firms hired by Respondent on behalf of the Trusts, represented, directly or indirectly, expressly or by implication, that it could be proven in the Collections Lawsuits that the Trusts owned the loans in question and that the Consumers in question owed Debts to the Trusts, if contested.

38.   In fact, in numerous instances, Respondent lacked the complete chain of assignment documentation needed to prove Trust ownership of the subject loans and the promissory note needed to prove the existence of certain loans.

39.   The representations are material because they are likely to affect a Consumer's choice or conduct regarding how to respond to a lawsuit and are likely to mislead a Consumer acting reasonably under the circumstances.

40.   Thus, Respondent's representations, as described in Paragraphs 25-29, constitute deceptive acts or practices in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

41.   In addition, Respondent's acts and practices, caused or were likely to cause substantial injuries to consumers.

42.    The injuries to consumers included, but were not limited to, all payments made, including garnishments of wages and bank accounts, to settle Debts not enforceable.

43.    The injuries to consumers were not reasonably avoidable by consumers and were not outweighed by any countervailing benefits to consumers or to competition.

44.    Thus, Respondent's conduct, as described in Paragraph 25-29, constitutes unfair acts or practices in violation of sections 1031(c) and 1036(a)(1)(B ) of the CFPA, 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

## ORDER
## VI
## Conduct Provisions

**IT IS ORDERED**, under sections 1053 and 1055 of the CFPA, that:

45.    Respondent and its officers, Service Providers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, and must take the following affirmative actions:

   a.    Respondent shall take all actions necessary to comply with the terms of the Consent Order.

   b.    Respondent must require that any Law Firm it retains in connection with the collection of student loans owned by the Trusts agree to abide by the terms and conditions of the Consent Order.

   c.    Within ninety (90) days of the Effective Date, Respondent must identify all Collections Lawsuits that were filed between November 1,

2014 and the Effective Date and that are missing the documentation described in subsection (f)(i)and (ii) of this Paragraph.

d. Within ninety (90) days of the Effective Date, Respondent must identify all Collections Lawsuits that were filed seeking Debt outside the statute of limitations and provide this information to the successor special servicer or any other Service Provider of the Trusts.

e. Within one-hundred twenty (120) days of the Effective Date, Respondent must provide to the successor special servicer and to the Bureau for each Consumer named in the suits identified in Paragraph 45c and 45d: the Consumer's name, all available contact information for the Consumer (including information in the possession of the attorneys who filed the suit), and the total amount of all payments made by the Consumer on or after the date on which the suit was filed.

f. Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not initiate a Collections Lawsuit to collect Debt unless Respondent possesses:

   i. the documentation necessary to prove that a Trust owns the loan, including but not limited to, documentation reflecting the complete chain of assignment from the Debt's originator to the specific Trust claiming ownership; and

   ii. a document signed by the Consumer, such as a promissory note, evidencing the agreement to pay the loan forming the basis of the Debt.

g.  Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not cause Law Firms hired by Respondent on behalf of the Trusts to initiate a Collections Lawsuit to collect on a loan for which the applicable statute of limitations has expired.

h.  Respondent shall establish written policies requiring Law Firms to confirm that the applicable statute of limitations has not expired at the time of the filing of the Collections Lawsuit;

i.  Respondent shall require Law Firms to provide a quarterly report to Respondent that includes, for each Collections Lawsuit, any data relevant to determining the applicable statute of limitations, such as date of lawsuit, date of default, and date of last payment, as well as identifies any lawsuits in which a consumer alleges in his pleadings that the lawsuit was filed outside the statute of limitations.

j.  Respondent shall not collect any Debt through a Collections Lawsuit that Respondent knows or learns was filed outside the statute of limitations, and if any such cases are pending, Respondent shall seek the immediate withdrawal or dismissal of the lawsuit.

k.  Respondent and its officers, agents, Service Providers, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, may not cause Law Firms hired by Respondent on behalf of the Trusts to collect any Debt through

Collections Lawsuits that Respondent or its agents have any reason to believe may be unenforceable.

l.  Respondent, its officers, agents, Service Providers, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, executing any Affidavit containing any misrepresentations, including false statements that:

   i.   the Affiant is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

   ii.  the Affiant has personal knowledge of the Consumer's debt;

   iii. the Affiant has personal knowledge of the loan's chain of assignment or ownership;

   iv.  the Affiant has personal knowledge of the documents relating to the loan's chain of assignment or ownership;

   v.   the Affidavit has been properly notarized if the Affidavit was not executed in the presence of a notary or if the notarization was otherwise not compliant with applicable notary laws; or

   vi.  certain documents or records concerning the Debt forming the basis of the Collections Lawsuit have been reviewed by the Affiant.

46. Respondent, its officers, agents, Service Providers, servants, employees, and attorneys, and all other persons in active concert or participation with any

of them, who receive actual notice of this Consent Order, whether acting directly or indirectly, are permanently restrained and prohibited from, in connection with the collection of a Debt, providing any testimony that contains any misrepresentations, including false statements that the witness:

  a. is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records;

  b. has personal knowledge of the Consumer's debt;

  c. has personal knowledge of the loan's chain of assignment or ownership; or

  d. has personal knowledge of the documents relating to the loan's chain of assignment or ownership.

47. If Respondent determines that it engages in any conduct prohibited by this Order, including but not limited to Paragraphs 45-46 of this Order, Respondent promptly will take the necessary steps to ensure that it ceases any and all practices that violate this Order.

48. Within ten (10) days of making the determination described in Paragraph 47 Respondent must submit to the Regional Director a report detailing (a) the practices that violate the Order, (b) the specific agents engaged in the practices in question, and (c) a plan to ensure that the practices cease and to remediate any harm resulting from the practices.

49. With regard to pending Collections Lawsuits filed by a Law Firm in which Respondent executed an Affidavit that was filed in support of the pending Collection Lawsuit and that contains any misrepresentations—including but

not limited to false statements that the Affiant: (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Respondent shall take the steps necessary, including getting permission from the successor special servicer, to direct Law Firms acting on behalf of the Trusts to withdraw such Affidavit unless the Trusts dismiss the suit in which the Affidavit was filed. Respondent shall take the steps necessary, including getting permission from the successor special servicer, to direct Law Firms acting on behalf of the Trusts to notify the court of the following in writing and must also simultaneously provide the court with a copy of the Consent Order entered into between the Bureau and the Respondent: "Plaintiff withdraws the affidavit of [insert name of Affiant] pursuant to Consent Order entered into by the Consumer Financial Protection Bureau and Transworld Systems, Inc."

50. With regard to Collections Lawsuits that were filed in which Respondent executed an Affidavit that was filed with a court or in arbitration, and a judgment was entered, that contained any misrepresentations—including but not limited to false statements that the Affiant: (1) is familiar with or has personal knowledge of the Consumer's education loan records or the maintenance of those records, (2) has personal knowledge of the

Consumer's indebtedness, (3) has personal knowledge of the loan's chain of assignment or ownership, (4) has personal knowledge about the maintenance of documents relating to the loan's chain of assignment or ownership, or (5) has attached as an exhibit a true and correct copy of a document—Respondent must instruct the Law Firms to cease post-judgment enforcement activities and Respondent will take the steps necessary, including getting permission from the successor special servicer, to instruct the Law Firms acting on behalf of the Trusts to seek to remove, withdraw, or terminate any active wage garnishment, bank levies, and similar means of enforcing those judgments or settlements as well as cease accepting settlement payments related to any such Collections Lawsuits.

51. Respondents must cooperate in all respects with any directive from the successor special servicer acting on behalf of the Trusts to:

   a. Make certain disclosures in connection with the collection of Debt owned by the Trusts;

   b. Withdraw any Affidavit or Collection Lawsuit; or

   c. Provide loan information or documents to the successor special servicer, including but not limited to, information and documents related to:

      i. Whether certain loans owned by the Trusts are no longer legally enforceable because the applicable statute of limitations has expired;

      ii. Whether Collections Lawsuits have been filed on any loans where sufficient documentation, including signed promissory notes and

documentation reflecting the complete chain of assignment from the Debt's originator to the Collection Lawsuit's named plaintiff, is not in the possession, custody or control of the Collection Lawsuit's named plaintiff to prove the existence of the Debt owed to the named plaintiff, or where the applicable statute of limitations has expired; and

iii.   Whether judgments were obtained in Collections Lawsuits described in Paragraph 51(c)(ii) and the identity of Consumers from whom the Trusts obtained payments in response to those Collections Lawsuits, and the specific amounts collected from these Consumers.

## VII

## Compliance Plan

**IT IS FURTHER ORDERED** that:

52.   Within ninety (90) days of the Effective Date, Respondent must submit to the Regional Director for review and determination of non-objection a compliance plan designed to ensure that the Attorney Network business unit of Respondent complies with all applicable Federal consumer financial laws with respect to Collections Lawsuits and the terms of this Consent Order (Compliance Plan). The Compliance Plan must include, at a minimum:

a.   Detailed steps for addressing each action required by this Consent Order;

b. Comprehensive, written policies and procedures designed to prevent violations of Federal consumer financial laws and associated risks of harm to Consumers with respect to Collections Lawsuits;

c. An effective employee training program required for all employees with any involvement in Collections Lawsuits, including but not limited to Affiants, whose duties include reviewing, executing, preparing, processing, verifying, , or notarizing of Affidavits that includes regular, specific, comprehensive training in Federal consumer financial laws commensurate with individual job functions and duties;

d. Implementation of reasonable and appropriate written policies and procedures to ensure the proper notarization processes for Affidavits, including that notaries place the Affiants under oath and witness their signatures;

e. Implementation of reasonable and appropriate written policies and procedures to ensure that Affiants verify the accuracy of each statement made in an Affidavit before executing the Affidavit;

f. Comprehensive, written policies and procedures designed to ensure that any Law Firms engaged by Respondent to collect Debt do not violate any Federal consumer financial laws, which must include at a minimum:

   i. the Law Firm's duty to maintain adequate internal controls to ensure compliance with Federal consumer financial laws;

   ii. the Law Firm's duty to provide adequate training on compliance with all applicable Federal consumer financial laws and

Respondent's policies and procedures related to Collections Lawsuits;

   iii.  Respondent's authority to conduct periodic onsite reviews of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

   iv.  periodic review by Respondent of the Law Firm's controls, performance, and information systems related to Collections Lawsuits; and

  g.  Specific timeframes and deadlines for implementation of the steps described above.

53.  The Regional Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Respondent to revise it. If the Regional Director directs Respondent to revise the Compliance Plan, Respondent must make the revisions and resubmit the Compliance Plan to the Regional Director within thirty (30) days.

54.  After receiving notification that the Regional Director has made a determination of non-objection to the Compliance Plan or any amendments thereto, Respondent must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## VIII

## Role of the Board

**IT IS FURTHER ORDERED** that:

55. Respondent's Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Consent Order prior to submission to the Bureau.

56. Although this Consent Order requires Respondent to submit certain documents for the review or non-objection by the Regional Director, the Board will have the ultimate responsibility for proper and sound management of Respondent and for ensuring that Respondent complies with Federal consumer financial law and this Consent Order.

57. In each instance that this Consent Order requires the Board to ensure adherence to or perform certain obligations of Respondent, the Board must:

   a. Authorize whatever actions are necessary for Respondent to fully comply with the Consent Order;

   b. Require timely reporting by management to the Board on the status of compliance obligations; and

   c. Require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## IX

### Order to Pay Civil Money Penalties

**IT IS FURTHER ORDERED** that:

58. Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in Section V of this Consent Order, and taking

into account the factors in 12 U.S.C. § 5565(c)(3), Respondent must pay a civil money penalty of $2.5 million to the Bureau.

59.    Within ten (10) days of the Effective Date, Respondent must pay $1.5 million of the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions. The remainder of the civil money penalty shall be paid in one installment within sixty (60) days of the Effective Date.

60.    The civil money penalty paid under this Consent Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

61.    Respondent must treat the civil money penalty paid under this Consent Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Respondent may not:

a.    Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Consent Order; or

b.    Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Consent Order.

62.    To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Respondent may not argue that Respondent is entitled to, nor may Respondent benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any

payment that the Bureau makes from the Civil Penalty Fund (Penalty Offset). If the court in any Related Consumer Action grants such a Penalty Offset, Respondent must, within thirty (30) days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## X

### Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

63.   In the event of any default on Respondent's obligations to make payment under this Consent Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

64.   Respondent must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Respondent.

65.   Under 31 U.S.C. § 7701, Respondent, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Consent Order.

66.   Within thirty (30) days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Respondent must notify the Regional Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Respondent paid or is required to pay to Consumers and describe the Consumers or classes of Consumers to whom that redress has been or will be paid.

## XI

### Reporting Requirements

**IT IS FURTHER ORDERED** that:

67.   Respondent must notify the Bureau of any development that may affect compliance obligations arising under this Consent Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Consent Order; the filing of any bankruptcy or insolvency proceeding by or against Respondent; or a change in Respondent's name or address. Respondent must provide this notice, if practicable, at least thirty (30) days before the development, but in any case no later than fourteen (14) days after the development.

68.   Within ninety (90) days of the Effective Date, and again one year after the Effective Date, Respondent must submit to the Regional Director an

accurate written compliance progress report (Compliance Report) that has

been approved by the Board, which, at a minimum:

    a. Describes in detail the manner and form in which Respondent has

       complied with this Consent Order; and

    b. Attaches a copy of each Order Acknowledgment obtained under

       Section XII unless previously submitted to the Bureau.

## XII

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that,

69. Within thirty (30) days of the Effective Date, Respondent must deliver a
copy of this Consent Order to each of its board members as well as to any
managers, employees, Service Providers, or other agents and
representatives who have responsibilities related to the subject matter of the
Consent Order.

70. For five (5) years from the Effective Date, Respondent must deliver a copy of
this Consent Order to any business entity resulting from any change in
structure referred to in Section XI, any future board members or executive
officers, as well as to any managers, employees, Service Providers, or other
agents and representatives who will have responsibilities related to the
subject matter of the Consent Order before they assume their
responsibilities.

71. Respondent must secure a signed and dated statement acknowledging
receipt of a copy of this Consent Order, ensuring that any electronic

signatures comply with the requirements of the E-Sign Act, 15 U.S.C.

§§ 7001-7031, within thirty (30) days of delivery, from all persons receiving

a copy of this Consent Order under this Section.

## XIII

## Recordkeeping

**IT IS FURTHER ORDERED** that

72. Respondent must create, or if already created, must retain for at least five

    (5) years from the Effective Date, the following business records:

    a. All documents and records necessary to demonstrate full compliance

       with each provision of this Consent Order, including all submissions to

       the Bureau.

73. Respondent must retain the documents identified in Paragraph 72 for the

    duration of the Consent Order.

74. Respondent must make the documents identified in Paragraph 72 available

    to the Bureau upon the Bureau's request.

## XIV

## Notices

**IT IS FURTHER ORDERED** that:

75. Unless otherwise directed in writing by the Bureau, Respondent must

    provide all submissions, requests, communications, or other documents

    relating to this Consent Order in writing, with the subject line, "*In re*

    Transworld Systems, Inc., File No. Year-CFPB- 0018," and send them

    either:

    a. By overnight courier (not the U.S. Postal Service), as follows:

Regional Director, Bureau Northeast Region
Consumer Financial Protection Bureau
140 East 45th Street, 4th Floor
New York, NY 10017]

or

b.  By first-class mail to the below address and contemporaneously by

email to Enforcement_Compliance@cfpb.gov:

Regional Director, Bureau Northeast Region
Consumer Financial Protection Bureau
140 East 45th Street, 4th Floor
New York, NY 10017

## XV

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

76.  Respondent must cooperate fully with the Bureau in this matter and in any

investigation related to or associated with the conduct described in Section

V. Respondent must provide truthful and complete information, evidence,

and testimony and Respondent must cause its officers, employees,

representatives, or agents to appear for interviews, discovery, hearings,

trials, and any other proceedings that the Bureau may reasonably request

upon ten (10) days written notice, or other reasonable notice, at such places

and times as the Bureau may designate, without the service of compulsory

process.

## XVI

## Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Respondent's compliance with this Consent Order:

77.    Within fourteen (14) days of receipt of a written request from the Bureau, Respondent must submit additional Compliance Reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

78.    Respondent must permit Bureau representatives to interview any employee or other person affiliated with Respondent who has agreed to such an interview. The person interviewed may have counsel present.

79.    Nothing in this Consent Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XVII
## Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED** that:

80.    Respondent may seek a modification to non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) by submitting a written request to the Regional Director.

81.    The Regional Director may, in his/her discretion, modify any non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) if he/she determines good cause justifies the modification. Any such modification by the Regional Director must be in writing.

## XVIII

### Administrative Provisions

82.    The provisions of this Consent Order do not bar, estop, or otherwise prevent the Bureau, or any other governmental agency, from taking any other action against Respondent, except as described in Paragraph 83.

83.    The Bureau releases and discharges Respondent from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in Section V of this Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Consent Order in future enforcement actions against Respondent and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Consent Order, or to seek penalties for any violations of the Consent Order.

84.    This Consent Order is intended to be, and will be construed as, a final Consent Order issued under section 1053 of the CFPA, 12 U.S.C. § 5563, and expressly does not form, and may not be construed to form, a contract binding the Bureau or the United States.

85.    This Consent Order will terminate five (5) years from the Effective Date or five (5) years from the most recent date that the Bureau initiates an action alleging any violation of the Consent Order by Respondent. If such action is dismissed or the relevant adjudicative body rules that Respondent did not

violate any provision of the Consent Order, and the dismissal or ruling is either not appealed or upheld on appeal, then the Consent Order will terminate as though the action had never been filed. The Consent Order will remain effective and enforceable until such time, except to the extent that any provisions of this Consent Order have been amended, suspended, waived, or terminated in writing by the Bureau or its designated agent.

86. Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

87. Should Respondent seek to transfer or assign all or part of its operations that are subject to this Consent Order, Respondent must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Consent Order.

88. The provisions of this Consent Order will be enforceable by the Bureau. For any violation of this Consent Order, the Bureau may impose the maximum amount of civil money penalties allowed under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondent wherever Respondent may be found and Respondent may not contest that court's personal jurisdiction over Respondent.

89. This Consent Order and the accompanying Stipulation contain the complete agreement between the parties. The parties have made no promises, representations, or warranties other than what is contained in this Consent Order and the accompanying Stipulation. This Consent Order and the

accompanying Stipulation supersede any prior oral or written

communications, discussions, or understandings.

90.    Nothing in this Consent Order or the accompanying Stipulation may be

construed as allowing the Respondent, its Board, officers, or employees to

violate any law, rule, or regulation.

**IT IS SO ORDERED**, this _15th_ day of September, 2017.

_Richard Cordray_

Richard Cordray
Director
Consumer Financial Protection Bureau

32