# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANGELIA MILLER**, on behalf of herself and all others similarly situated individuals <br><br> **Plaintiff,** <br> **v.** <br><br> **TRANSWORLD SYSTEMS INC, COGNITION FINANCIAL CORPORATION f/k/a FIRST MARBLEHEAD CORPORATION, THE NATIONAL COLLEGIATE FUNDING LLC, NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST I, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1,** <br> **Defendants.** | **PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br><br> **CASE NO.: 18-cv-0748(WFK)(RLM)** |
| **ANGELIA MILLER**, on behalf of herself and all others similarly situated individuals <br><br> **Plaintiff,** <br> **v.** <br><br> **FORSTER & GARBUS, LLP, MARK A. GARBUS, RONALD FORSTER,** <br><br> **Defendants.** | **CASE NO.: 18-cv-0751(WFK)(RLM)** |

Plaintiff, by and through her attorney, Abel L. Pierre, Esq., as and for her first amended

complaint against the Defendants, Transworld Systems, Inc. ("Transworld"), Cognition Financial

Corporation f/k/a First Marblehead Corporation ("CFC"), The National Collegiate Funding LLC,

("National Collegiate"), National Collegiate Master Student Loan Trust I ("Trust I"), National

Collegiate Student Loan Trust 2003-1 ("Trust 2003-1"), Forster & Garbus, LLP ("F&G"), Mark A. Garbus ("Garbus") and Ronald Forster ("Forster"), alleges as follows:

## I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendants' violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA") which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

2. Plaintiff brings this action on all causes of action on behalf of herself and the members of a class pursuant to Federal Rule of Civil Procedure 23.

## II. JURISDICTION

3. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k ("FDCPA") and 28 U.S.C. § 1331.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## III. ALLEGATIONS AS TO PARTIES

5. Plaintiff, Angelia Miller, ("Miller") is a natural person residing in the State of New York.

6. Miller is a "consumer" as said term is defined under the FDCPA, 15 U.S.C. § 1692a(3).

7. Upon information and belief, TRANSWORLD SYSTEMS, INC. is a California Domestic Corporation and a New York Foreign Corporation with a principal place of business of 500 Virginia Drive, Ste. 514, Ft. Washington, PA 19034. Transworld is authorized to conduct business in the State of New York through its registered agent CT Corporation System at 111 Eighth Avenue, New York, NY 10011.

8. Per § 20-490 of the New York City Administrative Code, any business that seeks to collect personal or household debts from New York City residents must have a Debt Collection Agency License from the New York City Department of Consumer Affairs.  Transworld possesses a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency".

9. Transworld operates an "Attorney Network business unit which is the agent and "Service Provider" for fifteen Delaware statutory trusts including Defendants National Collegiate Student Loan Trust 2003-1, National Collegiate Master Student Loan Trust-I.

10. The principal purpose of Transworld is the collection of debts using the instrumentalities of interstate commerce, including mails and telephone; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

11. Based upon the allegations in the above four paragraphs, Transworld is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

12. Upon information and belief, COGNITION FINANCIAL CORPORATION F/K/A FIRST MARBLEHEAD CORPORATION is a Delaware Domestic Corporation and a New York Foreign Corporation with a principal place of business of 200 Clarendon Street, 3rd Floor, Boston, Massachusetts 02116. CFC is authorized to conduct business in the State of New York through its registered agent CT Corporation System at 111 Eighth Avenue, New York, NY 10011.

13. Upon information and belief Defendant NATIONAL COLLEGIATE FUNDING LLC is a subsidiary of COGNITION FINANCIAL CORPORATION F/K/A FIRST MARBLEHEAD CORPORATION and is a foreign company operating as a student loan servicing institution. The National Collegiate Funding LLC is a limited liability company with a principal place

of business of c/o Wilmington Trust Company, as Owner Trustee, 100 North Market Street, Wilmington, DE 19890.

14. Upon information and belief, NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST-I is a Delaware Statutory Trust with a principal place of business at c/o Wilmington Trust Company, as Owner Trustee, 100 North Market Street, Wilmington, DE 19890.

15. Upon information and belief, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1 is a Delaware Statutory Trust with a principal place of business at c/o Wilmington Trust Company, as Owner Trustee, 100 North Market Street, Wilmington, DE 19890.

16. Upon information and belief Defendant FORSTER & GARBUS, LLP and is a domestic professional service limited liability partnership that did transact, and does now presently transact business in the State of New York. F&G is authorized to conduct business in the State of New York through its professional business address of 60 Vanderbilt Motor Parkway, Commack, NY 11725.

17. Upon information and belief, Defendant F&G regularly attempts to collect consumer debts alleged to be due to another.

18. Upon information and belief Defendant F&G is a debt collector as defined pursuant to 15 U.S.C. § 1692a(6) of the FDCPA.

19. As per § 20-490 of the New York City Administrative Code, any business that seeks to collect personal or household debts from New York City residents must have a Debt Collection Agency License from the New York City Department of Consumer Affairs. Pursuant to New York City Local Law No. 15, a Debt Collection Agency includes any attorney-at-law or law firm engaging in traditional debt collection activity.  See also Eric

M. Berman, P.C. v. City of N.Y., 796 F.3d 171 (2nd Cir., 2015).

20. Forster & Garbus, LLP possesses a license from the New York City Department of Consumer Affairs to operate as a "Debt Collection Agency".

21. Upon information and belief, Defendant MARK A. GARBUS is an "individual", an attorney and a partner of the "debt collector" F&G, a main financial beneficiary of "debt collector" F&G, an individual with a principal place of business located at "debt collector" F&G, and/or controls and/or supervises the debt collection activities of "debt collector" F&G. Garbus therefore is a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Therefore, Garbus is a debt collector as defined by 15 USC 1692b (6) and Garbus is accordingly liable for the acts of Defendant Forster & Garbus, LLP.

22. Upon information and belief, Defendant RONALD FORSTER is an "individual", an attorney and a partner of the "debt collector" F&G, a main financial beneficiary of "debt collector" F&G, an individual with a principal place of business located at "debt collector" F&G, and/or controls and/or supervises the debt collection activities of "debt collector" F&G. Forster therefore is a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Therefore, Forster is a debt collector as defined by 15 USC 1692b (6) and Forster is accordingly liable for the acts of Defendant Forster & Garbus, LLP.

23. Upon information and belief, on a date better known by Defendants, Defendants began to attempt to collect an alleged consumer debt from Plaintiff.

24. Defendants are subject to jurisdiction in the State of New York and venue of this district pursuant to New York Long Arm jurisdiction statute through the causation of injury in the state by acts or omissions inside and outside of the State of New York.

## IV. FACTUAL ALLEGATIONS

25. Plaintiff adopts and realleges the foregoing as fully restated herein.

26. On December 8, 2015, F&G at the request and/or with the authority of Transworld and on behalf of National Collegiate Master Student Loan Trust-I, filed in the New York State Supreme Court, County of Queens, a summons and complaint (exhibit A). Said summons and complaint was subsequently served on Plaintiff.

27. On December 8, 2015, F&G at the request and/or with the authority of Transworld and on behalf of National Collegiate Student Loan Trust 2003-1 filed in the New York State Supreme Court, County of Queens, a summons and complaint (exhibit B). Said summons and complaint was subsequently served on Plaintiff.

28. On December 8, 2015, F&G at the request and/or with the authority of Transworld and on behalf of National Collegiate Master Student Loan Trust-I filed in the New York State Supreme Court, County of Queens, a summons and complaint (exhibit C). Said summons and complaint was subsequently served on Plaintiff.

29. The aforementioned Summons and Complaints named "Angelia Miller" and "Jannie Moore" as Defendants.

30. Defendants filed the aforementioned Summons and Complaint in an attempt to collect a debt from Plaintiff, allegedly related to a student loan taken out by Plaintiff

31. Plaintiff Miller intended to use the proceeds of the loan for expenses related to her attendance at college.

32. For the reasons set forth below, Miller's receipt and reading of Exhibit A, Exhibit B, and Exhibit C, deprived Miller of her rights to not be subject to abusive, deceptive, or misleading debt collection practices.

33. Per Exhibit A, Exhibit B, and Exhibit C, these actions were filed and served to attempt to collect from Miller an educational loan debt.  Also, Exhibit A, Exhibit B, and Exhibit C were attempts to collect these past due debts from Miller in her individual capacity. Therefore, the past due debts at issue arose out of a transaction used primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

34. Not only did Trust-I and Trust 2003-1 lack standing to commence these actions, but they were also proscribed by a Consent Order (exhibit D) between the Consumer Financial Protection Bureau ("CFPB") and TSI, as servicing agent for National Collegiate Master Student Loan Trusts, including, but not limited to, National Collegiate Master Student Loan Trust I and National Collegiate Master Student Loan Trust 2003-1.

35. It must be noted that it has been thoroughly and publicly documented that the Defendants have absolutely no legal claim to pursue a vast number of the student loan debts that they have attempted to collect, including the loans at issue in this action.  As noted by the Consumer Financial Protection Bureau, the National Collegiate Student Loan Trusts and their debt collector, Transworld Systems, Inc., have engaged in a pattern of filing illegal

student loan debt collection lawsuits which they could not have won if same were contested, subjecting the defendants to millions of dollars in fines and penalties. "Consumers were sued for private student loan debt that the companies couldn't prove was owed or was too old to sue over. These lawsuits relied on the filing of false or misleading legal documents."

36. On or about January 6, 2016, Plaintiff entered her answer with counterclaims to each of the three actions filed against her. Said answers with counterclaims were served on Forster & Garbus, LLP.

37. On or about January 5, 2017, unbeknownst to Plaintiff, Defendants moved for summary judgment in all three actions, primarily seeking to dismiss Plaintiff's counterclaims asserted against them.

38. Subsequently, the court granted Defendants' motions in all three actions, citing Plaintiff's failure to file opposition.

39. Upon notification that the court had granted judgment to Defendants', Plaintiff immediately moved to vacate said judgments, citing amongst other things, failure of Defendants to notify her and her counsel of their motions.

40. Subsequently, the court agreed to hear Plaintiff's motions.

41. Defendants, upon receiving Plaintiff's motions, filed affirmations in opposition with exhibits to Miller's motions to vacate the judgments entered in the state court action. Two of Defendants' Affirmations are dated September 1, 2017. The third affirmation is dated October 30, 2017.

42. Moreover, Defendants even went so far as to file Notes of Issue with the court on two separate occasions, namely December 21, 2017 and December 27, 2017, consequently

placing these actions on the court's trial calendar.

43. Defendants Affirmations dated in September and October 2017 and filing of the Notes of Issue in December of 2017 were done in furtherance of their unlawful attempts to collect a debt from Plaintiff in violation of the Fair Debt Collections Practice Act.

44. ¶¶ 41-43 clearly indicates Defendants continued collection activity of these debts from the Plaintiff.

45. Furthermore, each instance of improper debt collection activity constitutes a new, discrete violation for purposes of the FDCPA's one-year statute of limitations.

46. In light of the facts articulated herein, Defendants utilized false and deceptive means to attempt to coerce Plaintiff into paying a debt.

47. In light of the facts articulated herein, Defendants utilized false and deceptive means in an attempt to oppress and harass Plaintiff into paying a debt.

48. In light of the facts articulated herein, Defendants attempted to collect a debt by communicating false representations or utilizing deceptive means.

49. In light of the facts articulated herein, Defendants attempted to collect a debt by intentionally mischaracterizing the character, amount and legal status of the debt.

50. In light of the facts articulated herein, Defendants attempted to collect a debt by threating or take action that cannot be legally taken or that they had no intention of taking.

51. In light of the facts articulated herein, Defendants attempted to collect a debt by making false or misleading representations that the communications were from an attorney

52. In light of the facts articulated herein, Defendants engaged in collection activity, the purpose of which was to harass the Plaintiff.

53. In light of the facts articulated herein, Defendants attempted to collect a debt not authorized or permitted by law.

54. Defendants' activity on these occasions were a communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692d, 1692e, 1692e(2)(A), 1692e(3), 1692e(5), 1692e(10), 1692f and 1692f(1) amongst others.

55. Plaintiff commenced this action within one year of the unlawful actions and/or within one year of reasonably knowing of the unlawful actions of Defendants.

56. That as per 15 U.S.C. § 1692 et seq. and as a result of the above violations, Defendants are liable to the Plaintiff for actual damages pursuant to 15 U.S.C. § 1692k(a)(1); and statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each and every Defendant herein.

## VI. ALLEGATIONS OF LAW

57. Defendants violated the FDCPA. Defendants' violations include, but are not limited to the following: d, e, and f.

  i.  Defendants violated 15 U.S.C. §1692d by harassing, oppressing and/or abusing the consumer by employing unfair tactics in attempt to collect a debt;

  ii.  Defendants violated 15 U.S.C. §1692e by utilizing false, deceptive and misleading representation to collect a debt;

  iii.  Defendants violated 15 U.S.C. §1692e(2)(A) by making false or misleading representations about the character, amount or legal status of the alleged debt;

    iv.  Defendants violated 15 U.S.C. §1692e(3) by making false or misleading representations that any individual is an attorney or that any communication was from an attorney;

    v.  Defendants violated 15 U.S.C. §1692e(5) by threatening to take any action that cannot legally be taken or that is not intended to take;

    vi.  Defendants violated 15 U.S.C. §1692e(10) by utilizing false representation or deceptive means to collect a debt;

    vii.  Defendants violated 15 U.S.C. §1692f by utilizing unfair and unconscionable means to attempt to collect an unfair alleged debt;

    viii.  Defendants violated 15 U.S.C. §1692f(1) by employing unfair practices in their attempts to collect an amount not authorized by an agreement creating the debt or permitted by law;

## VII. CLASS ALLEGATIONS

58. Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

59. The class consist of (a) all consumers (b) sued in New York State on behalf of National Collegiate Student Loan Trust 2003-1 within 5 years of the date of the filing of this lawsuit.

60. Defendants and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

61. The class members are so numerous that joinder is impracticable. On information and belief, there are more than 50 members.

62. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.

63. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases and class actions.

64. A class action is the superior means of adjudicating this dispute.

65. Individual cases are not economically feasible.

## FIRST CAUSE OF ACTION

66. Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-65 of this Complaint.

67. Exhibit A, Exhibit B, and Exhibit C each directly or indirectly represented to Miller and the court that National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, respectively had standing and/or a legal right to file and/or serve Exhibit A, Exhibit B, and Exhibit C and/or to obtain a Judgment for the amounts sought in Exhibit A, Exhibit B, and Exhibit C, respectively.

68. As set forth in Exhibit A, Exhibit B, and Exhibit C, the educational loan debts referred to in Exhibit A, Exhibit B, and Exhibit C did not originate with Defendants National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1.

69. The educational loan debts referred to in Exhibit A, Exhibit B, and Exhibit C were assigned, sold, or transferred one or more times before Defendants National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1 allegedly became the owner of the educational loan debts.

70. Prior to the filing and/or service of Exhibit A, Exhibit B, and Exhibit C, Miller did not receive a notice of the assignment, transfer, or sale from each and every prior assignor of the educational loan debt.

71. Prior to the filing and/or service of Exhibit A, Exhibit B, and Exhibit C, Miller was not sent a notice of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt.  In the alternative, prior to the filing and/or service of Exhibit A, Exhibit B, and Exhibit C, there did not exist the ability to produce a document showing that Miller was sent a notice of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt and/or the date on which Miller received such notice.

72. Prior to the filing and/or service of Exhibit A, Exhibit B, and Exhibit C, there did not exist the ability to produce a document showing a complete chain of title from the entity that originated the educational loan debt to National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, respectively.

73. For the reasons set forth in the above paragraphs 67-71 and/or 72, notwithstanding and separate and apart from NY CPLR 5019(c), pursuant to New York common law, National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, respectively did not have standing and/or a legal right to file and/or serve Exhibit A, Exhibit B, and Exhibit C and/or to obtain a Judgment for the amounts sought in Exhibit A, Exhibit B, and Exhibit C, respectively.

74. Prior to filing and/or serving Exhibit A, Exhibit B, and Exhibit C, F&G did not request, possess, and/or or review any documentation regarding the chain of title and/or the notice to Miller of the assignment, transfer, or sale by each and every prior assignor of the

educational loan debt.  Therefore, F&G failed to conduct a "meaningful attorney review" prior to filing and/or serving Exhibit A, Exhibit B, and Exhibit C.

75. Transworld, on behalf of itself and National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1, issued work standards, directives, and/or guidelines to F&G which contained instructions, controls, and rules governing the steps F&G could and could not take to attempt to collect debts including the filing and prosecution of lawsuits.  These instructions, controls, and rules included the types of account documents F&G could request or obtain at various stages of a debt collection lawsuit.  These instructions, controls, and rules controlled and/or substantially effected all the actions F&G took regarding the attempt to collection the educational loan debts via Exhibit A, Exhibit B, and Exhibit C.

76. All the actions alleged in this Complaint taken by F&G were taken by F&G as the attorney and/or "debt collector" for, on behalf of or at the request of the "debt collector" Transworld.

77. Based on the allegations in paragraphs 74 and 75 of this Complaint, Transworld is vicariously liable for the actions of F&G in attempting to collect the educational loan debts via the filing and/or service of Exhibit A, Exhibit B, and Exhibit C.

78. Prior to F&G filing and/or serving Exhibit A, Exhibit B, and Exhibit C, Transworld refused to provide to F&G or prohibited F&G from requesting any documentation regarding the chain of title and/or the notice to Miller of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt.  In the alternative, Transworld authorized F&G to file and/or serve Exhibit A, Exhibit B, and Exhibit C without F&G requesting or possessing any documentation regarding the chain of title and/or the notice to Miller of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt.

In the alternative, prior to F&G filing and/or serving Exhibit A, Exhibit B, and Exhibit C, Transworld knew or should have known that there did not exist the ability to produce a document showing that Miller was sent a notice of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt and/or the date on which Miller received such notice and there did not exist the ability to produce a complete chain of title.

79. For the reasons set forth above, F&G attempting to collect the educational loan debts via the filing and/or service of Exhibit A, Exhibit B, and Exhibit C amounted to a violation by Transworld of 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(3), 15 USC 1692e(5), 15 USC 1692e(10), 15 USC 1692f, and/or 15 USC 1692f (1).

## SECOND CAUSE OF ACTION

80.  Plaintiff repeats and re-alleges the allegations contained in paragraphs ¶¶ 1-79 of this Complaint.

81. Upon information and belief, F&G filed and/or served Exhibit A, Exhibit B, and Exhibit C outside the statute of limitations as regards either the entire educational loan debt or the portion of the educational loan debt that was due prior to any acceleration of the educational loan debt to the extent allowed by the applicable statute of limitations and any tolling or forbearance of the applicable statute of limitations.

82. Prior to filing and/or serving Exhibit A, Exhibit B, and Exhibit C, F&G did not request, possess, and/or or review any documentation regarding the date on which Miller last made a payment and/or any forbearances.  Therefore, F&G failed to conduct a "meaningful attorney review" prior to filing and/or serving Exhibit A, Exhibit B, and Exhibit C.

83. Transworld, on behalf of itself and National Collegiate Master Student Loan Trust-I and

National Collegiate Student Loan Trust 2003-1, issued work standards, directives, and/or guidelines to F&G which contained instructions, controls, and rules governing the steps F&G could and could not take to attempt to collect debts including the filing and prosecution of lawsuits. These instructions, controls, and rules included the types of account documents F&G could request or obtain at various stages of a debt collection lawsuit. These instructions, controls, and rules controlled and/or substantially effected all the actions F&G took regarding the attempt to collection the educational loan debts via Exhibit A, Exhibit B, and Exhibit C.

84. All the actions alleged in this Complaint taken by F&G were taken by F&G as the attorney and/or "debt collector" for, on behalf of or at the request of the "debt collector" Transworld.

85. Based on the allegations in paragraphs 81 and 82 of this Complaint, Transworld is vicariously liable for the actions of F&G in attempting to collect the educational loan debts via the filing and/or service of Exhibit A, Exhibit B, and Exhibit C.

86. Prior to F&G filing and/or serving Exhibit A, Exhibit B, and Exhibit C, Transworld refused to provide to F&G or prohibited F&G from requesting any documentation regarding the date on which Miller last made a payment and/or any forbearances. In the alternative, Transworld authorized F&G to file and/or serve Exhibit A, Exhibit B, and Exhibit C without F&G requesting or possessing any documentation regarding the chain of title and/or the notice to Miller of the assignment, transfer, or sale by each and every prior assignor of the educational loan debt.

87. For the reasons set forth above, F&G attempting to collect the educational loan debts via the filing and/or service of Exhibit A, Exhibit B, and Exhibit C amounted to a violation by Transworld of 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(3), 15 USC 1692e(5),

15 USC 1692e(10), 15 USC 1692f, and/or 15 USC 1692f (1).

### THIRD CAUSE OF ACTION

88. Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-87 of this Complaint.

89. Based on the allegations set forth in this Complaint, the filing and/or service of Exhibit A, Exhibit B, and Exhibit C by F&G was deceptive or misleading.

90. The filing and/or service of Exhibit A, Exhibit B, and Exhibit C by F&G was consumer oriented for the following reasons:

    a.   They were directed at Plaintiff;

    b.   Plaintiff is a consumer;

    c.   The conduct at issue against Plaintiff, a consumer, affected or had the potential to affect similarly situated consumers; and

    d.   Defendants regularly attempt to collect student loans and other consumer debts from hundreds or thousands of consumers.  The same or similar violations of the FDCPA as set forth in this Complaint were directed at numerous numbers of these consumers.

91. Plaintiff suffered injuries as a result of the deceptive or misleading actions including but not limited to the aforementioned violations of her rights under the FDCPA, the cost of retaining an attorney to defend her, and the emotional distress of being sued.

92. For the same reasons as set forth in the prior causes of action in this Complaint, Transworld is vicariously liable and/or directly responsible for each of the aforementioned actions, misrepresentations, and violations of the FDCPA set forth above.

93. The actions by F&G and Transworld set forth in this Complaint were done by F&G and Transworld as the attorney and/or agent of and for the benefit of National Collegiate Master

Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1.

94. The actions by F&G and Transworld set forth in this Complaint were done by F&G and Transworld with the knowledge and/or authority of National Collegiate Master Student Loan Trust-I and National Collegiate Student Loan Trust 2003-1.

95. In light of the allegations in this cause of action, each of the aforementioned actions, misrepresentations, and violations of the FDCPA set forth above constitute a violation of General Business Law 349 by Defendants.

## FOURTH CAUSE OF ACTION
## Violations of the New York General Business Law § 349

96. Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-95 of this Complaint.

97. Under New York General Business Law §349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

98. GBL § 349 provides in relevant part as follows:

   a. *Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.*

   And;

   h. *In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.*

99. It is the regular business practice of Defendants to harass consumers in an abusive manner by commencing State Court actions where they did not have standing or legal authority to bring suit.

100.    Defendants engaged in such deceptive practices aimed at other consumers.

101.    Defendants' actions have a broad impact on consumers at large.

102.    By unlawfully harassing Plaintiff, Defendants caused Plaintiff to suffer actual injury in the form of emotional distress.

103.    By unlawfully seeking to collect a debt from Plaintiff, Defendants caused Plaintiff to suffer actual injury in the form of emotional distress.

104.    As a direct and proximate result of Defendants' deceptive acts and practices committed in violation of New York GBL § 349, Plaintiff was damaged in that she, among other things, suffered stress and anxiety as a result of Defendants' abusive attempts to collect a debt.

105.    Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged to be owed by her, by engaging in behavior which is harassing or abusing to Plaintiff or otherwise engaging in acts or practices that are unfair or deceptive towards Plaintiff.

## FIFTH CAUSE OF ACTION

106.    Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-105 of this Complaint.

107.    National Collegiate is not authorized to do business in New York.

108.    National Collegiate does business in New York by virtue of the number of lawsuits it brings throughout New York, the volume of its debt collection activities throughout New

York, the number of loans owned by it in which the debtor lives or resides in New York, and its use of attorneys and debt collectors located throughout New York to file the lawsuits and attempt to collect the debt.

109.     Since National Collegiate is not authorized to do business in New York but does business in New York, National Collegiate had no legal right to be the plaintiff in the Debt Collection Action and Defendants had no legal right to file the aforementioned Summons and Complaint on behalf of National Collegiate.

110.     Based on the allegations in this cause of action, Defendants violated 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(5),15 USC 1692f , and/or 15 USC 1692f(1).

## SIXTH CAUSE OF ACTION

111.     Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-110 of this Complaint.

112.     Per the Summons and Complaints filed by the defendants in New York State Court, the student loan debt was alleged to have been assigned from the original lender to National Collegiate Funding, LLC, National Collegiate Master Student Loan I, and National Collegiate Student Loan Trust, 2003-1, respectively.

113.     Upon information and belief, there exists no legally enforceable documentation showing that each assignor of the student loan debt notified one or both Plaintiffs of the assignment; and therefore National Collegiate has no legal right to attempt to collect the student loan debt via the aforementioned Summons and Complaints.

114.     Based on the allegations in this cause of action, Defendants violated 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(5),15 USC 1692f , and/or 15 USC 1692f(1).

## SEVENTH CAUSE OF ACTION

115.     Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-114 of this Complaint.

116.     Upon information and belief, there exists no documentation showing that Plaintiff received any loan proceeds from the original lender and therefore Defendants have no legal right to attempt to collect the student loan debt.

117.     Based on the allegations in this cause of action, Defendants violated 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(5),15 USC 1692f , and/or 15 USC 1692f(1).

118.     Plaintiffs repeat and re-allege the allegations in paragraphs 1-43 of this Complaint.

119.     Upon information and belief, National Collegiate did not accelerate the student loan debt prior to the filing of the aforementioned Summons and Complaint; and therefore National Collegiate has no legal right to attempt to collect the student loan debt via the aforementioned Summons and Complaints.

120.     Based on the allegations in this cause of action, Defendants violated 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(5),15 USC 1692f , and/or 15 USC 1692f(1).

## EIGHTH CAUSE OF ACTION

121.     Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-120 of this Complaint.

122.     As a result of all of the above, Defendants failed to conduct a meaningful review prior to filing and/or serving the aforementioned Summons and Complaints and the signature of an attorney on the aforementioned Summons and Complaints constitute a false representation or implication that Complaints are from an attorney.

123.    Based on the allegations in this cause of action, Defendants violated 15 USC 1692e, 15 USC 1692e(3),15 USC 1692f , and/or 15 USC 1692f(1).

### NINTH CAUSE OF ACTION

124.    Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-123 of this Complaint.

125.    National Collegiate retains attorneys to attempt to collect debts from New York consumers by filing lawsuits in New York against New York consumers; but for the reasons set forth in the prior causes of action, National Collegiate has no legal right to maintain an action in a New York state court and has no legal right to obtain a judgment even assuming it had a legal right to maintain an action in a New York state court.

126.    Prior to the aforementioned filing of the aforementioned lawsuits, National Collegiate provides to the attorneys retained to file these lawsuits nothing but a charge-off date to determine the statute of limitations accrual date.  It does not provide information as to whether there ever was a payment made by the consumer, the date of the last payment made by the consumer, the date on which the consumer ceased attending school on at least a half-time basis, the existence and nature of any agreement by the consumer regarding the forbearance of payments, the number of assignor's in the chain of title, and/or each assignor's notification to the consumer of the assignment.

127.    In addition to the above, National Collegiate retains attorneys to file the aforementioned lawsuits without providing the aforementioned information, knowing that the consumer never made a payment, knowing that the consumer did not execute any agreement regarding the forbearance of payments, knowing that any agreement regarding the forbearance of payments did not toll the statute of limitations, knowing that the statute of

limitations to file a lawsuit in New York for all or part of the debt had expired, and/or knowing that each assignor of the debt did not notify the consumer of the assignment.

128.     National Collegiate directs Defendants prior to filing a lawsuit to rely on the charge-off date to determine the statute of limitations accrual date; and/or Defendants prior to filing a lawsuit purposefully relies on nothing but a charge-off date to determine the statute of limitations accrual date.

129.     Defendants prior to filing a lawsuit know that the consumer never made a payment or does not try to ascertain whether the consumer ever made a payment, knows that the consumer never executed any agreement regarding the forbearance of payments or does not try to ascertain whether the consumer ever executed any agreement regarding the forbearance of payments, knows that the agreement regarding the forbearance of payments did not toll the statute of limitations or does not try to ascertain whether the agreement regarding the forbearance of payments tolled the statute of limitations, knows that the statute of limitations to file a lawsuit in New York had expired as regards all or part of the debt or does not try to ascertain whether the statute of limitations to file a lawsuit in New York had expired for any portion of the debt, does not try to ascertain the number of assignor's in the chain of title, and/or knows that each assignor of the debt did not notify the consumer of the assignment or does not try to ascertain whether each assignor of the debt notified the consumer of the assignment.

130.     A consumer would receive a lawsuit indicating, from the name of the plaintiff, that it related to a student loan debt.  The consumer knew they owed money on a student loan.  The lawsuit would represent that the plaintiff was authorized to bring this lawsuit and/or a consumer would not understand that the plaintiff is not authorized to bring this lawsuit.  A

consumer would not ever realize or understand that the plaintiff is not the first assignee of the original creditor or that the law requires each assignor to notify the consumer of the assignment as a prerequisite to a plaintiff obtaining a judgment.  The statute of limitations to bring this lawsuit as to all or a portion of the debt would have expired prior to the bringing of this lawsuit making it illegal to bring the lawsuit or requiring the lawsuit to be dismissed as to at least a portion of the alleged debt and therefore eliminating the ability of the plaintiff to collect all or a portion of the debt via this lawsuit.  Based on the method for calculating the statute of limitations and the knowledge required to determine the applicable statute of limitations as well as whether the statute of limitations had expired as to all or a portion of the debt, a consumer would have no ability to ascertain that the statute of limitations had expired as to all or a portion of the debt or to ascertain that the statute of limitations could have expired as to only a portion of the debt.

131.    As a result of the above, the consumer incorrectly would believe that they had an obligation to pay or all a portion of the debt or have a judgment against them.

132.    As a result of the above, the aforementioned actions and omissions were deceptive or misleading.

133.    The above actions and omissions are consumer oriented for the following reasons:

   a.    They were directed at Plaintiff;

   b.    Plaintiff is a consumer; and

   c.    The conduct at issue against Plaintiff, consumers, affected or had the potential to affect similarly situated consumers; and

   d.    Defendants regularly attempt to collect student loans and other consumer debts from hundreds or thousands of consumers.  Upon information and belief, the same or

similar actions, misrepresentations, omissions, and violations of the FDCPA were directed at numerous numbers of these consumers.

134.     Plaintiffs suffered injuries as a result of the deceptive or misleading acts or omissions including but not limited to the aforementioned violations of their rights under the FDCPA, the cost of retaining an attorney to defend them, and the emotional distress of being sued without any legal basis.

135.     In light of the facts set forth above, each of the actions, misrepresentations, omissions, and violations of the FDCPA set forth above constitute a violation of General Business Law 349 by Defendants.

## TENTH CAUSE OF ACTION

136.     Plaintiff repeats and re-alleges the allegations contained in ¶¶ 1-135 of this Complaint.

137.     Per the Summons and Complaints filed by the Defendants in New York State Court, National Collegiate Master Student Loan Trust I and National Collegiate Master Student Loan Trust 2003-1 are named the original creditors of the underlying debts in their respective actions.

138.     Upon information and belief, there exists no legally enforceable documentation showing that National Collegiate Master Student Loan Trust I and National Collegiate Master Student Loan Trust 2003-1 are the original creditors of the student loan debt.

139.     Based on the allegations in this cause of action, Defendants violated 15 USC 1692e, 15 USC 1692e(2)(A), 15 USC 1692e(5),15 USC 1692f , and/or 15 USC 1692f(1).

## **PRAYER FOR RELIEF**

Plaintiff, Angelia Miller prays that this Court:

a.  Grant an order certifying the proposed class herein under Federal Rule 23 and appointing Plaintiff and her undersigned counsel of record to represent same;

b.  Create a common fund available to provide notice of and remedy Defendants' violations;

c.  Declare that Defendants violated the FDCPA;

d.  Declare that Defendants violated NY GBL;

e.  For an award of actual and treble damages pursuant to 15 U.S.C. § 1692k against the Defendants for Plaintiff;

f.  Enter judgment in favor of Plaintiff and against Defendants, for statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA;

g.  Enter judgment enjoining Defendants from collecting or attempting to collect any debt alleged to be owed by Plaintiff,

h.  Grant such further relief as deemed just.

## JURY DEMAND

Plaintiff, Angelia Miller demands trial by jury.

Respectfully submitted,

Dated: July 11, 2018

**LAW OFFICE OF ABEL L. PIERRE,
ATTORNEY-AT-LAW, P.C.**

Attorney I.D.#AP-5508
140 Broadway, 46th Floor
New York, New York 10005
Telephone:  (212) 766-3323
Facsimile:  (212) 766-3322
abel@apierrelaw.com

**Attorney for Plaintiff**